**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BYRON W. BROOKS,**<br>*Plaintiff,*<br><br><br>v.<br><br>**RANDSTAD TECHNOLOGIES, LLC,<br>KEITH GILCHRIST, and JOSEPH<br>SANTORA**<br>*Defendants.* | <br><br><br>**CIVIL ACTION NO. 19-cv-04037** |

### MEMORANDUM RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                                               **March 24, 2022**

## I.     INTRODUCTION

On September 5, 2019, Byron Brooks ("Plaintiff") filed this employment discrimination action against his former employer Randstad Technologies, LLC ("Ranstad") and two former supervisors, Keith Gilchrist ("Gilchrist") and Joseph Santora ("Santora," collectively with Randstad and Gilchrist, "Defendants"), alleging Defendants discriminated against him on the basis of his race, age, and disability.  See generally ECF No. 1 ("Compl."). Plaintiff also alleges Defendants retaliated against Plaintiff by terminating him after he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  See generally Compl.  Plaintiff's Complaint avers three claims:

(1)     Count I: Racial, Disability, and Age Discrimination pursuant to 42 U.S.C. § 2000e ("Title VII"), 42 U.S.C. §12112 ("ADA"), and 29 U.S.C. §621 ("ADEA"); (Compl. ¶¶ 41–47)

(2)     Count II: Racial, Disability, and Age Discrimination pursuant to the Pennsylvania Human Relations Act ("PHRA"); (Compl. ¶¶ 48–53) and

(3)     Count III: Retaliation pursuant to Title VII and the PHRA.  See Compl. ¶¶ 54–58.

For the reasons stated below, Defendants' Motion is:

**Count I:**

GRANTED as to Age Discrimination pursuant to the ADEA;

GRANTED as to Disability Discrimination pursuant to the ADA;

DENIED as to Racial Discrimination pursuant to Title VII against Defendant Randstad;

GRANTED as to Racial Discrimination pursuant to Title VII against Defendants Gilchrist and Santora;

**Count II:**

GRANTED as to Age Discrimination pursuant to the PHRA;

GRANTED as to Disability Discrimination pursuant to the PHRA;

DENIED as to Racial Discrimination pursuant to the PHRA against all Defendants;

**Count III:**

DENIED as to Retaliation.

## II.    RELEVANT UNDISPUTED FACTS[1]

Plaintiff is an African American male born on April 4, 1955.  Pl. Facts[2] ¶ 1.  In September 2011, Plaintiff was assigned to the role of Account Manager to Technisource's, Defendant Randstad's predecessor's, Vanguard account.  Defs. Facts[3] ¶¶ 6, 10.

Defendant Randstad is an Information Technology placement company that provides recruiting for various staffing and solution services to domestic and international customers alike.  Defs. Facts ¶ 1.  As part of its staffing services, Defendant Randstad contracts with clients

---

[1] The following facts are undisputed or reflect Plaintiff's version of the facts supported by the record, pursuant to this Court's obligation to view all facts and inferences in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

[2] ECF 39, Plaintiff Byron Brooks [Corrected 2/11/22] Counter 56.1 Statement in Opposition to Defendants' Motion for Summary Judgment.

[3] ECF 24–1, Defendants' Statement of Undisputed Facts in Support of their Motion for Summary Judgement.

who agree to pay a set amount for the position to be filled.  Pl. Facts ¶ 15.  Defendant Randstad fills the position and compensates the new hire with wages, benefits, and/or other amounts.  Pl. Facts ¶ 16.  The difference between the amount a client pays for the position and Defendant Randstad's compensation to the candidate equals the profit and is called the "Spread."  Pl. Facts ¶ 17.

As Vanguard's Account Manager, Plaintiff's responsibilities included: meeting with client managers to understand staffing needs, meeting with recruiters to obtain candidates to fill vacant positions, screening the candidates, offering the candidates to Vanguard, completing performance reviews, attending vendor partner meetings, closing deals, assisting with candidates' onboarding processes, terminating placements Vanguard no longer needed, and attempting to expand Vanguard's business with Defendant Randstad through use of Defendant Randstad's resource programs called "Solutions."  Pl. Facts ¶ 14.

In 2015, Plaintiff was diagnosed with Parkinson's Disease.  Pl. Facts ¶ 66.  Then, Plaintiff went on medical leave from February 2017 through March 2017.  Defs. Facts ¶ 25; Pl. Facts 94.  Plaintiff returned to work for only a few days, then went back out on medical leave in March 2017 through June 2017.  Pl. Facts ¶ 94; Defs, Facts ¶ 25.  The two leaves combined resulted in Plaintiff's absence from work from February 2017 through June 2017 (the "2017 LOA").  Defs. Facts ¶ 25.

Upon Plaintiff's return from his 2017 LOA, Defendants removed Plaintiff from the Vanguard account (Defs Facts ¶ 61) after attending Vanguard meetings with Plaintiff and after

receiving complaints from Vanguard about Plaintiff's performance on the account.  Defs. Facts ¶¶ 21, 55. [4]

In November 2017, Plaintiff was placed on a performance improvement plan (the "Original PIP").  Defs. Facts ¶ 63.  Plaintiff understood that although he was removed from the Vanguard account and was placed on the Original PIP, he would still receive commissions from his prior placements at Vanguard.  Defs. Facts ¶ 64.  Plaintiff was given certain criteria to meet in order to achieve success on the Original PIP.  Defs. Facts ¶ 69.  On November 8, 2017, Plaintiff asked Defendant Gilchrist whether Plaintiff's race was a factor in placing him on the Original PIP; Defendant Gilchrist denied race was a factor in the decision.  Defs. Facts ¶ 71.

On December 1, 2017, Plaintiff sent an e-mail message to Defendant Gilchrist and to an employee of Defendant Randstad's Human Resources Department asserting his belief that his placement on the Original PIP was the result of racial discrimination.   Defs. Facts ¶ 75.  Defendant Randstad immediately investigated Plaintiff's concerns.  Defs. Facts ¶ 77.

Meanwhile, Plaintiff did not meet the expectations of the Original PIP.  Defs. Facts ¶ 80. [5]  On January 8, 2018, Plaintiff's Original PIP was continued by ninety days (the "Extended PIP").  Defs. Facts ¶ 85.  Plaintiff was given criteria he needed to achieve in order achieve success on the Extended PIP.  Defs. Facts ¶ 86.

---

[4] Plaintiff disputes Defendants' motivation for his removal from the Vanguard account, but it is not disputed that Defendants removed Plaintiff from the account and that Defendants contend the removal was motivated by Plaintiff's performance.

[5] Plaintiff disputes the reason for which he failed to meet the Original PIP's expectations but not that he did not meet them.

On March 26, 2018, approximately one week before the Extended PIP was set to end, Plaintiff went out on another medical leave and did not return to work until October 15, 2018 (the "2018 LOA").  Defs. Facts ¶ 90.

During his 2018 LOA, on April 12, 2018, Plaintiff filed a dual charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC").  Defs. Facts ¶ 91.

When Plaintiff returned to work in October 2018, Defendants placed him on another, updated PIP (the "Renewed PIP") with similar expectations to those contained in the Extended PIP.  Defs. Facts ¶ 92; Pl. Facts ¶ 182.  Plaintiff again communicated his belief that his placement on the PIPs, specifically the Renewed PIP, was discriminatory.  Pl. Ex. 26.  A PIP review meeting was held on November 2, 2018 between Defendant Randstad Human Resources Personnel Mr. William Monterosso, Defendant Gilchrist, and Plaintiff during which Plaintiff alleged his placement on the PIP was the result of racial discrimination.  Pl. Facts ¶ 185.

On November 13, 2018, Plaintiff's employment with Defendant Randstad was terminated.  Pl. Facts ¶ 186.

### III.    RELEVANT PROCEDURAL HISTORY

On April 12, 2018, Plaintiff cross-filed charges of discrimination with the EEOC and the PHRC against Defendants.  ECF 1, ("Compl.") ¶ 9.  On April 2, 2019, Plaintiff filed an amended charge of discrimination with the EEOC.  Compl. ¶ 10.  On June 11, 2019, the EEOC issued Plaintiff his Notice of Right to Sue.  Compl. ¶ 11.

Plaintiff initiated this action in federal court on September 5, 2019.  See generally Compl. After discovery concluded, Defendants filed this Motion for Summary Judgment (the "Motion"

or "Def. Mot. at [page number]") seeking summary judgment on each of Plaintiff's three counts. ECF 24.

On June 21, 2021, Plaintiff filed his Rule 56.1 Statement of Facts (ECF 26), Plaintiff's Opposition to Defendant's Rule 56.1 Statement of Facts (ECF 27), and a Declaration of Derek S. Sells (ECF 28) to which all of Plaintiff's exhibits in opposition to Defendant's Motion were attached.

On June 22, 2021, Plaintiff filed his Memorandum of Law in opposition to Defendants' Motion.   ECF 29.   Plaintiff then filed a corrected version of his Memorandum of Law in opposition to Defendants' Motion (ECF 30), and a corrected opposition to Defendant's Rule 56.1 Statement of Facts (ECF 31) that Plaintiff originally filed the day before.  ECF 27.

On June 25, 2021, Plaintiff filed a letter (ECF 32) to the Court attaching unredacted versions of two exhibits that were originally filed as attachments to Derek Sells' Declaration on June 21, 2021 (ECF 28).

On July 19, 2021, Defendants filed their Reply Brief in support of their Motion (ECF 35) and Defendants' response to Plaintiff's Rule 56.1 Statement of Facts.  ECF 36.

Upon review of the briefs and exhibits related to Plaintiff's opposition to Defendants' Motion, this Court issued an order on January 27, 2022 ordering Plaintiff to re-file Plaintiff's Rule 56.1 Statement of Facts (ECF 26), Plaintiff's Opposition to Defendants' Rule 56.1 Statement of Facts (ECF Nos. 27 and 31), and Plaintiff's Memorandum of Law in opposition to Defendants' Motion (ECF 30).  This Court's January 27, 2022 (the "Correction Order") did not permit Plaintiff to make any substantive modifications to his filings; it only permitted Plaintiff to re-file his documents with corrected citations to the record.  See ECF 37 ¶ 1.

On February 11, 2022, Plaintiff filed his Corrected Opposition to Defendants' Rule 56.1 Statement of Fact (ECF 38), Plaintiff's Corrected Rule 56.1 Statement of Fact (ECF 39), and Plaintiff's Corrected Memorandum of Law in opposition to Defendants' Motion.  EFC 39–1.

On February 24, 2022, Defendants filed their Reply Brief limited to the issue of pretext, pursuant to the Court's Correction Order ¶ 2.

That same day, Plaintiff filed a letter to the Court explaining that while Plaintiff's citations to his own hard-copy exhibits were correct in his February 11, 2022 filings, Plaintiff's counsel noticed she filed "an incompletely duplicated Exhibit 48" and requested permission to "efile a Corrected and complete Exhibit 48."  ECF 41.

Upon review of the briefs and exhibits related to Plaintiff's opposition to Defendants' Motion, Plaintiff's filings from February 11, 2022 still contain incorrect citations to the record because Plaintiff cited to his hard-copy exhibits, not those he e-filed as attachments to Derek Sells' Declaration of June 21, 2021.  ECF 28.  A comparison of Mr. Sells' declaration, which numerically lists Plaintiff's exhibits (see ECF 28), against CM/ECF's list of Plaintiff's exhibits (see ECF 28-1–53), reveals that what Plaintiff refers to as Exhibit 40a- Alfred Santora Transcript of 12/8/20 (part 2), was e-filed by Plaintiff as Exhibit 42.  This dissonance between Plaintiff's hard copy exhibit numbers and Plaintiff's e-filed exhibit numbers is compounded by the fact that Plaintiff again listed a hard-copy exhibit as Exhibit 41a, but then filed it as Exhibit 43.  The disparity grows from there for every subsequent exhibit.  Accordingly, the Court cites to the factual record as it is maintained on CM/ECF.

IV.    **DISCUSSION**

    A.    **The Continuing Violation Doctrine**

Defendants argue Plaintiff's Title VII (Counts I and III) and PHRA claims (Counts II and III) are all untimely because they are supported by acts that occurred outside the three-hundred-day EEOC and one-hundred-and-eighty-day PHRA time periods for actionability.  Def. Mot. at 9–10.

Plaintiff argues discriminatory acts occurring outside the 300-day EEOC time limit can still support his Title VII claims (Counts I and III) because Plaintiff established a "continuing violation" of discrimination.[6]  Pl. Resp. at 14–15.[7]  Plaintiff argues he "demonstrated that at least one act occurred within the [EEOC and/or PHRA] filing period" and showed "the discriminatory conduct is more than an isolated or sporadic act" of discrimination.  Pl. Resp. at 15.  Therefore, Plaintiff argues, the 300-day period becomes "irrelevant."  Pl. Resp. at 16.

The continuing violation doctrine does not apply to racial, disability, and/or age discrimination claims pursuant to Title VII, the ADA, the ADEA, and PHRA.  It may only be available to toll the statutory timely filing requirement for hostile work environment claims.

> To bring suit under Title VII, a claimant in a deferral state, such as Pennsylvania, must first file a complaint with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. §

---

[6] Plaintiff does not respond to Defendant's arguments concerning the untimeliness of Plaintiff's PHRA claims.  Therefore, Plaintiff waives these arguments.  See Pl. Resp. at 14–15 (containing no arguments regarding the PHRA's 180-day time limit and the viability of Plaintiff's Count II or Count III pursuant to PHRA); Brown v. Johnson, 116 F. App'x 342, 346 (3d Cir. 2004) ("[i]t is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal.").

[7] ECF 39–1, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Corrected February 11, 2022).

> 2000e–5(e)(1).  ***'Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'***  A discrete act in itself constitutes a separate actionable unlawful employment practice.  Discrete acts include, for example, 'termination, failure to promote, denial of transfer, or refusal to hire.'
>
> Under the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated ***to make out a hostile work environment claim***; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'

Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (emphasis added)); see also O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (listing "termination, failure to promote, denial of transfer, refusal to hire, wrongful suspension, wrongful discipline, denial of training, [and] wrongful termination" as discrete acts triggering statutory time limits).

Plaintiff did not bring a hostile work environment claim.  See generally Compl. Therefore, the only actionable acts Plaintiff can use to support his Title VII claims are those that occurred within 300 days of Plaintiff's EEOC charge, June 16, 2017–April 12, 2018.  42 U.S.C. § 2000e–5(e)(1).  Likewise, Plaintiff can only base his PHRA claims on acts that occurred within 180 days of his PHRA charge, October 14, 2017–April 12, 2018. [8]  43 Pa. Stat. § 959(h).

---

[8] Plaintiff's own citation to a pre-Nat'l R.R. Passenger Corp. v. Morgan, extra-jurisdictional Van Zant v. KLM Ropel Dutch Airlines, 80 F.3d 708 (2d Cir. 1996), confirms this result.  Plaintiff's quoted material does not appear in the opinion, and instead, Van Zant refused to apply the continuing violation doctrine to the plaintiff's Title VII claims.  80 F.3d at 713.  The Court held the plaintiff's Title VII claim was time barred because it was predicated on allegedly unlawful employment actions that occurred outside the 300-day statutorily prescribed period.  Id.

**B.**     **The Prima Facie Elements of Racial, Age, and Disability Discrimination Claims pursuant to Title VII, the ADA, and the ADEA**

This Court analyzes Plaintiff's Title VII and PHRA discrimination claims under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Willis v. UPMC Children's Hosp. of Pittsburgh</u>, 808 F.3d 638, 643 (3d Cir. 2015).[9]   Under the <u>McDonnell Douglas</u> framework, the plaintiff possesses the initial burden to establish the prima facie elements of a discrimination claim.   <u>McDonnell Douglas</u>, 411 U.S. at 802.   A plaintiff establishes these elements by showing: (i) he is a member of a protected class; (ii) he was qualified for the position he sought to attain or retain; (iii) he suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of intentional discrimination.   <u>Jones v. Temple Univ.</u>, 622 Fed. Appx. 131, 134 (3d Cir. 2015) (citing <u>Mandel</u>, 706 F.3d at 169)).

If a plaintiff sufficiently establishes these four prima facie elements, the burden shifts to the defendant to produce a legitimate non-discriminatory reason for the taken course of action. <u>McDonnell Douglas</u>, 411 U.S. at 802.   Once the defendant articulates such a reason, the burden shifts back to the plaintiff to show, by a preponderance of the evidence, that the defendant's articulated reason for the adverse action was merely pretext, not the real motivation for the adverse action.   <u>Id.</u> at 804; <u>Sarullo v. U.S. Postal Service</u>, 352 F.3d 789, 797 (3d Cir. 2003).

---

[9] Because Plaintiff relies on indirect evidence of discrimination based on his race, age, and disability, the <u>McDonnell Douglas</u> analysis applies to Plaintiff's Title VII racial discrimination claim (<u>Comcast Corp. v. Nat'l Assoc. of African American-Owned Media</u>, 140 S. Ct. 1009, 1019 (2020)), his ADEA age discrimination claim (<u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1108 (3d Cir. 1997)), and his ADA disability claim (<u>Walton v. Mental Health Ass'n of Southeastern Pa.</u>, 168 F.3d 661, 667–68 (3d Cir. 1999)).

1.      Prima Facie Elements of Plaintiff's Age and Disability
Discrimination Claims pursuant to the ADEA and the ADA

Defendants argue they are entitled to summary judgment because Plaintiff cannot

establish the second, third, and fourth elements of a prima facie claim for discrimination pursuant

to Title VII, the ADA, and the ADEA. [10]  Def. Mot. at 10.

Plaintiff failed to establish the fourth prima facie element of age and disability

discrimination claims—that Defendants imposed an adverse employment action onto Plaintiff

under circumstances that give rise to an inference of intentional discrimination.  In Plaintiff's

briefing, and reiterated by Plaintiff's counsel at oral argument, the predominant evidence

Plaintiff relies on to support his age and disability claims occurred beyond the EEOC and PHRA

time limits for actionability.  Supra Section IV(A).  Plaintiff contends Defendant Santora made

"smoking gun" comments of direct discrimination against Plaintiff to another Randstad

employee, Mr. Brian Jackson.  Pl. Resp. at 4–5, 18–19, 21; Pl. Facts ¶¶ 61, 65.  However, it is

undisputed that the very latest these alleged comments could have been made to Mr. Jackson was

before Mr. Jackson's termination from Randstad in September 2016, well before the EEOC's

applicable time period of June 16, 2017–April 12, 2018, and the PHRA's applicable time period

of October 14, 2017–April 12, 2018.  See Pl. Facts ¶¶ 56, 61.  Therefore, these alleged comments

cannot support Plaintiff's age and disability discrimination claims.

Without Defendant Santora's alleged comments to Mr. Jackson, the remaining evidence

Plaintiff relies on to support his ADEA and ADA claims is insufficient to satisfy the fourth prima

facie element of these age and disability discrimination claims.  Plaintiff alleged that on one

---

[10] Because Plaintiff has the burden of proof on his discrimination and retaliation claims at trial,
Defendants can meet their summary judgment burden by simply pointing out "that there is an
absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S.
317, 325 (1986).

occasion Defendants Santora and Gilchrist laughed at Plaintiff during a Skype call after Plaintiff "spoke with slurred speech." Pl. Facts ¶ 111. Plaintiff alleged his speech was slurred because his brain stimulator, implanted as part of his Parkinson's disease treatment, was miscalibrated. Pl. Facts ¶¶ 109–110. Although it is within the applicable EEOC and PHRA time limits, this allegation alone does not establish that Plaintiff was placed on PIPs and/or terminated because Defendants Santora and Gilchrist harbored discriminatory intent against Plaintiff's Parkinson's diagnosis and/or age.

Despite Plaintiff's contention to the contrary, Defendants' placement of two younger non-disabled employees on PIPs also does not establish discriminatory intent. Pl. Resp. at 19. The placement of two non-disabled, younger employees on PIPs, without any other evidence of age or disability discrimination, shows Defendants treated Plaintiff just as Defendants treated other non-disabled, younger employees. Indeed, Plaintiff argues at great lengths that he was *not* similarly situated to these two non-disabled, younger employees because he earned higher spreads than these employees and was a member of certain Randstad achievement clubs in which these employees did not earn membership. See Pl. Facts ¶¶ 148–154. Therefore, Defendants' placement of these employees on PIPs, and their prompt termination from Randstad, does not establish Defendants treated employees outside of Plaintiff's protected class more favorably than they did Plaintiff; these employees were not similarly situated to Plaintiff.

Accordingly, Defendants' Motion for Summary Judgment is granted as to Plaintiff's age and disability discrimination claims pursuant to the ADEA, the ADA, and the PHRA.

2.      Prima Facie Elements of Plaintiff's Racial Discrimination Claim
        pursuant to Title VII

a.      *Membership of a Protected Class*

The parties do not dispute the first prima facie element of a Title VII discrimination claim—that Plaintiff, an African American man in his sixties with Parkinson's disease, is a member of a protected class. See Def. Mot. at 10–11; Pl. Resp. at 17.

b.      *Qualification for the Position*

Defendants argue Plaintiff was not qualified for the position of Senior Account Manager because Plaintiff did not meet Defendant Randstad's legitimate expectations for that position. Def. Mot. at 11. Defendants contend the number of client visits Plaintiff attended, the quality of those visits, Plaintiff's responsiveness, his ability to identify business opportunities for Defendant Randstad, and Plaintiff's ability to communicate Randstad's capabilities, all contributed to Plaintiff's unsatisfactory performance. Def. Mot. at 11.

Plaintiff argues he was qualified for the Senior Account Manager position because he "achieved unprecedented success as an account executive at [Defendant] Randstad." Pl. Resp. at 17. Plaintiff contends he was the only Account Manager who generated such a sizable Solution for Vanguard, qualified every year for membership in Defendant Randstad's President's Club, and was a top-five performer for Defendant Randstad until he was fired. Pl. Resp. at 17–18.

Courts employ an objective standard when deciding whether an employee was qualified for the position at issue. Sempier v. Johnson & Higgins, 45 F.3d 724, 729 (3d Cir. 1995). The standard Plaintiff must meet to show his qualification is not onerous at this summary judgment stage. Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 271 (3d Cir. 2010).

Whether or not Plaintiff was qualified for the Account Manager position is a genuine issue of material fact that must be decided by a factfinder. One way in which Defendants argue

Plaintiff did not meet Defendants' legitimate expectations for the Account Manager role was the number of client visits, or meetings with clients Plaintiff scheduled and attended.  Def. Mot. at 11.[11]  But there is undisputed evidence in the record that Defendant Gilchrist admitted Plaintiff was "supposed to have meetings, placements, staffing" but Plaintiff did not "have to do that per say."  Pl. Ex. 15 at 249.  Defendant Gilchrist also admitted Plaintiff was "number 4 in sales for the entire company" at the end of 2016 and that Plaintiff "brought in the highest solutions deal" Defendant Gilchrist had seen to date.   Pl. Ex. 42, Gilchrist Depo. Part 1, 101:6–101:11.  Defendant Santora also testified that Plaintiff was "Number 4 in the company nationwide."  Pl. Ex. 40, Santora Depo. Part 1, 189:2–6.  This Court cannot make credibility-related findings at this summary judgment stage, so inconsistencies in Defendants' testimony can only be evaluated by a factfinder.   See Facenda v. N.F.L. Films, Inc., 542 F.3d 1007, 1024 (3d Cir. 2008) (reversing District Court's summary judgment grant because the District Court rejected certain deposition testimony and this rejection was an improper "credibility judgment, [] disallowed when ruling on a summary judgment motion.").

This evidence may lead a reasonable factfinder to infer Plaintiff was qualified for the Senior Account Manager position at the time he was terminated from Randstad.  Therefore, Plaintiff met his low burden of establishing he was qualified for the position, and disputes related to Plaintiff's qualifications are issues of material fact the jury must decide.

_____

[11] Not only are they in dispute, but these qualifications are also subjective.  Subjective qualifications are better left to the analysis of whether Defendants' legitimate, non-discriminatory reason for Plaintiff's PIP placements and termination is pretext.  See Sempier, 45 F.3d at 729 ("to deny the plaintiff an opportunity to move beyond the initial stage of establishing a prima facie case because he has failed to introduce evidence showing he possesses certain subjective qualities would improperly prevent the court from examining the criteria to determine whether their use was mere pretext.").

c.      *Adverse Employment Action*

Defendants argue Plaintiff cannot establish the third element of a prima facie discrimination claim—that Plaintiff suffered an adverse employment action—because placement on a PIP "is not, in and of itself, an adverse action." Def. Mot. at 12. Plaintiff argues his placement on three PIPs was an adverse employment action because the PIPs were really just a way for Defendants to fabricate a legitimate non-discriminatory reason to terminate Plaintiff. See generally Pl. Resp. Plaintiff also argues his termination from Randstad constituted an adverse employment action. Pl. Resp. at 18.

"Placement on a PIP is not an adverse employment action absent accompanying changes to pay, benefits, or employment status." Reynolds v. Dept of Army, 439 Fed. Appx. 150, 153 (3d Cir. 2011). Defendant Santora testified that an employee's placement on a PIP precluded the employee from qualifying for Defendant Randstad's President's Club (Pl. Ex. 40, Santora Depo. Part 1, 173:13–21), so Plaintiff's placement on the Original, Extended, and Renewed PIPs precluded Plaintiff from the benefit of achieving President's Club membership, including but not limited to attendance at a President's Club celebration event held "at an exceptional destination … includ[ing] airfare, hotel accommodations, [] and awards night dinner and party for the winner and a guest." Pl. Ex. 15, President's Club Criteria.

The record contains other evidence that may lead a reasonable factfinder to infer Plaintiff's placement on the Original, Extended, and Renewed PIPs was not due to his alleged performance deficiencies but was due to his race. Defendant Santora testified that Defendant Gilchrist's standing in the President's Club was below Plaintiff's, yet Defendant Gilchrist, a Caucasian man, was not placed on a PIP. Pl. Ex. 40, Santora Depo. Part 1, 174:19–175:5. Defendant Santora also testified that another Caucasian Account Manager, Andrew Brantley, had a lower President's Club standing than Plaintiff but was not placed on a PIP. Pl. Ex. 40, Santora

15

Depo. Part 1, 175:10–24.  As a result, Mr. Brantley and Defendant Gilchrist were able to qualify for membership to President's Club, while Plaintiff's PIPs precluded him from enjoying the same opportunity.

Plaintiff also suffered an adverse employment action when he was ultimately terminated from Defendant Randstad in November 2018.  Pl. Facts ¶ 186.  Termination is an actionable adverse employment action.  Paradisis v. Englewood Hosp. Med. Ctr., 680 F. App'x 131, 136 (3d Cir. 2017) ("An actionable adverse employment action is a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").  Plaintiff has therefore established this prima facie element of his racial discrimination claim pursuant to Title VII.

### d.    Inference of Intentional Discrimination

Defendants argue Plaintiff cannot establish the fourth prima facie element of a Title VII discrimination claim because Plaintiff "cannot show that any similarly situated [] White, [] employee was treated more favorably than [Plaintiff] was."  Def. Mot. at 12.

Plaintiff counters that the fact that Plaintiff was denied requested administrative support, was forced to split commissions with co-account managers, was placed on "pretextual" PIPs, and was terminated, is all evidence "that the circumstances of [Defendants'] adverse employment actions raise an inference of discrimination, thus meeting the fourth element of the [McDonnell Douglas] analysis."  Pl. Resp. at 18.  Plaintiff also argues a journal Defendant Gilchrist maintained on Plaintiff evidences the fact that Plaintiff was treated worse than similarly situated employees not part of his protected class because Defendant Gilchrist was not journaling any other employees' performance.  Pl. Resp. at 19.

Plaintiff's placement on subsequent PIPs—while his Caucasian counterparts, Defendant Gilchrist and Andrew Brantley, were not placed on PIPs despite ranking lower in Randstad's

President's Club nationwide rankings than Plaintiff—could lead a reasonable factfinder to infer discriminatory animus was the true catalyst for Plaintiff's PIPs.  Supra Section IV(B)(2)(c); see also May v. PNC Bank, 434 F. Supp. 3d 284, 296 (E.D. Pa. 2020) ("[c]ommon circumstances giving rise to an inference of unlawful discrimination include … the more favorable treatment of similarly situated colleagues outside the relevant class.").  The fact that Defendant Gilchrist maintained a journal on Plaintiff's performance, but not on the performances of other Account Managers who were Caucasian, may also lead a reasonable factfinder to find the circumstances of Plaintiff's PIP placements and termination give rise to an inference of racial discrimination. Pl. Ex. 42, Gilchrist Depo. Part 1, 79:6–11.

### 3.    Defendant's Legitimate Non-Discriminatory Reason

Defendants possess only a low burden of production to complete the second prong of the McDonnell Douglas framework.  Parson v. Vanguard, 702 Fed. Appx. 63, 67 (3d Cir. 2017); Cridland v. Kmart Corp., 929 F. Supp. 2d 377, 387 (E.D. Pa. Mar. 2013) (Baylson, J.)). Defendants contend Plaintiff's poor job performance—specifically his failure to introduce his supervisors, Defendants Gilchrist and Santora, to clients during client meetings, to communicate staffing requests to Defendant Randstad, to schedule client meetings or interviews, his lack of communication with Vanguard managers whose account Plaintiff was assigned to manage, and his refusal to contact clients about potential candidate placements—was the reason for his placement on multiple PIPs and his ultimate termination. Def. Mot. at 11, 14–15.  The factual record, including but not limited to Defendants Gilchrist and Santora's deposition testimony, sufficiently supports Defendants' legitimate, non-discriminatory reason to satisfy Defendants'

low burden of production.[12]   Accordingly, Defendants completed step two of the <u>McDonnell Douglas</u> framework.

4.   <u>Pretext</u>

In step three of the framework, the burden shifts back to Plaintiff to prove Defendants' reason is pretext.  <u>McDonnell Douglas</u>, 411 U.S. at 804.

> [T]o defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

<u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994).

To discredit Defendants' non-discriminatory reason, Plaintiff "cannot simply show that [Defendants'] decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated [Defendants], not whether [Defendants are] wise, shrewd, prudent, or competent."   <u>Id.</u> at 765.   Plaintiff must, "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendants'] proffered reasons for [their] action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that [Defendants] did not act for [the asserted] non-discriminatory reasons." <u>Silver v. Am. Inst. of Certified Pub. Accts.</u>, 212 F. App'x 82, 85 (3d Cir. 2006)

---

[12]  <u>See</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994) ("The employer satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.  The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff.").

(quoting <u>Fuentes</u>, 32 F. 3d at 762.)).   "The factfinder may infer from the combination of the plaintiff's prima facie case, [and Plaintiff's] own rejection of the employer's proffered nondiscriminatory reason, that the employer unlawfully discriminated against the plaintiff and was merely trying to conceal its illegal act with the articulated reason."   <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 331 (3d Cir. 1995).

### a.   *Defendant Gilchrist's Journal*

Plaintiff alleged Defendant Gilchrist began a journal in October 2016 to record Plaintiff's job performance.   Pl. Facts ¶ 80.   Plaintiff alleged Defendant Gilchrist's journal contained inaccuracies, and Plaintiff argued these inaccuracies establish Defendants' legitimate non-discriminatory reason for Plaintiff's termination was pretextual.   Pl. Resp. at 20.

Taken as a whole, the facts in the record related to Defendant Gilchrist's journal could lead a rational trier of fact to disbelieve Defendants' legitimate, non-discriminatory reason for Plaintiff's placement on the PIPs and his termination.   First, Defendant Gilchrist admitted he only took notes on Plaintiff's performance and not of the performance of any other Randstad employee.   Pl. Facts ¶ 87; <u>see also</u> Pl. Ex. 43, Gilchrist Depo. Part 1 at 79:6–11.   Second, Defendant Gilchrist admitted the notes he did record of Plaintiff's performance were selective and did not reflect Plaintiff's entire performance.   <u>See</u> Pl. Ex. 42, Gilchrist Depo. Part 1 at 94:16–94:25.   These admissions could cause a reasonable factfinder to disbelieve Defendants' legitimate, non-discriminatory reason for placing Plaintiff on the Original, Extended, and Renewed PIPS and/or for terminating him.

### b.   *Defendant Gilchrist's PIP Admission*

Defendant Gilchrist's admission that a "PIP won't work" for Plaintiff may also lead a factfinder to believe Plaintiff's placement on PIPs was not due to performance deficiencies.   Pl.

Resp. at 20; Pl. Facts ¶ 140; Pl. Ex. 15 at 249.   The parties do not dispute Defendant Gilchrist

stated his belief that,

> I think that a PIP won't work in [Plaintiff's] situation. . . . I don't
> even know what to put on the PIP . . . Yes, he is supposed to have
> meetings, placements, staffing, but he does not have to do that per
> say . . all that comes to him . . technically that comes to him by
> accident.

Pl. Facts ¶ 140; Pl. Ex. 15, Gilchrist-Monterosso Conversation Summary at 4.   Defendant

Gilchrist's admission that Plaintiff could not achieve success on his PIP could lead a reasonable

factfinder to believe the PIPs were imposed to set Plaintiff up to fail, not as a result of his job

performance.

### c.   *Plaintiff's Past Performance May Establish Pretext*

Plaintiff argues his exceptional job performance also establishes pretext.  Pl. Resp. at 20.

Plaintiff argues Defendant Gilchrist's claim—that one legitimate, non-discriminatory reason for

Plaintiff's termination was his failure to obtain a Solution—is belied by the fact that Plaintiff

was the *only* account executive at Defendant Randstad to obtain a Solution from Vanguard, to be

placed on a PIP, and to be fired.  Pl. Resp. at 20.

In <u>Brewer v. Quaker State Oil Ref. Corp.</u>, Plaintiff Brewer was terminated from Quaker

after working there for several decades.  <u>Brewer v. Quaker State Oil Ref. Corp.</u>, 72 F.3d 326, 328

(3d Cir. 1995).   Brewer lost his ADEA discrimination claim on summary judgment, but that

decision was reversed when the Third Circuit found a genuine issue of material fact existed as to

whether Quaker's legitimate, non-discriminatory reason for terminating Brewer was pretextual.

<u>Id.</u> at 330–333.   Quaker's legitimate, non-discriminatory reason for terminating Brewer was due

to, "continuous performance problems, including poor follow-up on customer requests, poor

communications with clients and with management, too little time spent in [Brewer's] territory,

and late and ambiguous sales reports."   <u>Id.</u> at 330.   Brewer argued this reason—his poor job

performance—was pretext for age discrimination because he was successful in his position for "nearly twenty-five years", was rated "fully acceptable" in Brewer's last five annual performance evaluations issued by Quaker and was given a bonus for surpassing his sales quota for the two years preceding his termination.  Id. at 331.  Concluding Brewer's history of successful job performance could establish pretext, the Third Circuit held, "Brewer's deficiencies pale beside his consistently good sales performance" and these deficiencies could lead a reasonable factfinder to find it "implausible that Quaker [] would have fired Brewer for such deficiencies when he was successful in the sole area identified by Quaker's own performance incentive program—sales."  Id. at 332.

Similarly to Quaker, Defendants' legitimate, non-discriminatory reason for terminating Plaintiff was his poor job performance.  Def. Mot. at 14–15.  Plaintiff introduced evidence that he qualified to President's Club in 2018, and that membership to the President's Club was merit based and a metric of success at Defendant Randstad.  Pl. Facts ¶ 25; Pl. Ex. 41, Santora Depo. Part 2 at 314.  Defendant Santora testified that even though Plaintiff was a member of the President's Club in 2018, and even though he was around "Number 4" on the list of Defendant Randstad's top employees, Plaintiff was still terminated that same year.  Pl. Ex. 41, Santora Depo. Part 2 at 314:4–22.  Just like the Brewer dissonance, this disparity between Plaintiff's past successes and Defendants' legitimate non-discriminatory reason, may lead a reasonable factfinder to infer discrimination was the real reason for Plaintiff's PIP placements and termination.

### C.   The Prima Facie Elements of Racial, Age, and Disability Discrimination Claims pursuant to the PHRA[13]

For the reasons discussed supra Section IV(B)(1), Defendants' Motion for Summary Judgment is granted against Plaintiff's age and disability discrimination claims pursuant to the PHRA because Plaintiff failed to establish the fourth prima facie element of those claims.

For the reasons discussed supra Section IV(B)(2), Defendants' Motion for Summary Judgment is denied against Plaintiff's racial discrimination claims pursuant to the PHRA because Plaintiff established the prima facie elements of this claim and a reasonable factfinder may disbelieve Defendants' legitimate non-discriminatory reason for placing Plaintiff on PIPs and for terminating him.

### D.   The Prima Facie Elements of Plaintiff's Title VII and PHRA Retaliation Claim

> To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.

Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006), as amended (Sept. 13, 2006).  At the prima facie stage, the employee plaintiff "must produce evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse employment action."  Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 259 (3d Cir. 2017).

If the plaintiff establishes these three prima facie elements, the McDonnell Douglas analysis applies, shifting the burden to the defendant employer to assert a legitimate, non-retaliatory reason for the adverse employment action.  Moore, 461 F.3d at 341.  If the defendant

---

[13] "Claims under the PHRA are interpreted coextensively with Title VII claims." Atkinson v. LaFayette Coll., 460 F.3d 447, 454 n.6 (3d Cir. 2006) (citing Kelly v. Drexel Univ., 94 F.3d 102,

employer sets forth a legitimate non-discriminatory reason, the burden shifts back to the plaintiff employee to produce evidence from which a reasonable factfinder could reasonably conclude the defendant's proffered reason was false, and that retaliation was the defendant's true reason for the adverse action.  Id.

       1.    <u>Causation</u>

Defendants argue Plaintiff cannot establish the third element of a prima facie retaliation claim—the existence of a causal connection between Plaintiff's protected activity and any adverse employment action he suffered.  Def. Mot. at 20.  Defendant contends Plaintiff's retaliation claims concern his placement on the Original PIP and his removal from the Vanguard account, both of which were in direct response to Plaintiff's poor job performance and both of which occurred before Plaintiff undertook any protected activities.  Def. Mot. at 20–21.

Plaintiff argues a temporal proximity exists between his protected activities and Defendants' adverse actions because his last complaint of discrimination occurred on November 9, 2018, and he was terminated on November 13, 2018.  Pl. Resp. at 24.

Causation between a plaintiff's protected activity and the adverse employment action taken against them can be demonstrated in several ways, including but not limited to the plaintiff's establishment of "a temporal proximity unusually suggestive of retaliatory motive." <u>Carvalho-Grevious</u>, 851 F.3d at 260.  "The proffered evidence, looked at as a whole, may suffice to raise the inference" of causation.  <u>Id.</u>  Whether an inference of causation has been established is a "highly context-specific" inquiry.  <u>Id.</u>

The parties dispute the reasons for which Plaintiff was placed on the Extended PIP and the Renewed PIP.  Defendants argue Plaintiff was placed on these two PIPs because he failed to

---

105 (3d Cir. 1996)).

succeed on the Original PIP.  Def. Mot. at 21; Defs. Facts ¶ 84; Pl. Ex. 43, Gilchrist Depo. Part 2 at 296:3–17; Pl. Ex. 42, Gilchrist Depo. Part 1 at 234:4–14.  Plaintiff contends his performance improved during his Original PIP.  Pl. Facts ¶ 166; Pl. Ex. 17; Pl. Ex. 14.

The evidence in the record could lead a reasonable factfinder to determine Plaintiff's performance *did* improve during the Original PIP, and that a proximity exists between Plaintiff's engagement in protected activities—his informal and formal discrimination complaints—and his placement on the Extended and Renewed PIPs and his termination.  Carvalho-Grevious, 851 F. 3d at 261.

## 2.   Pretext

Defendants also argue Plaintiff cannot establish Defendants' legitimate, non-retaliatory reason for placing Plaintiff on the Extended and Renewed PIPs and for firing him was pretextual. Def. Mot. at 23–24.

Plaintiff does not respond to Defendants' argument that Plaintiff's termination was legitimate and non-retaliatory. [14]  See generally Pl. Resp. at 22–25.

To survive summary judgment, Plaintiff must "produce some evidence from which a jury could reasonably infer" that Defendants' legitimate, non-retaliatory reason is "false, and that retaliation [is] the real reason for the adverse employment action."  Moore, 461 F.3d at 342.  For the same reasons discussed supra Section IV(B)(4), Plaintiff has produced sufficient evidence from which a reasonable factfinder could believe Defendants' legitimate, non-retaliatory reason was pretext, and that retaliation for Plaintiff's complaints of discrimination was the likely reason for Plaintiff's Extended and Renewed PIP placement and termination.

---

[14]  Plaintiff's failure to make an argument in response acts as a waiver.  Brown v. Johnson, 116 F. App'x 342, 346 (3d Cir. 2004).

### E.      Individual Liability pursuant to Title VII, ADA, or ADEA

Defendants argue there is no individual liability pursuant to Title VII, the ADA, and the ADEA, so to the extent this Court denies Defendants' Motion on those claims, Defendant submits those claims should be dismissed as to Defendants Gilchrist and Santora.  Def. Mot. at 24.  Plaintiff makes no argument in response.[15]  See generally Pl. Resp.

Defendants are correct.  The Third Circuit has consistently held individuals cannot be personally liable pursuant to Title VII.  Sheridan v. E.I. DuPon de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996).[16]

### F.      Plaintiff's Derivative PHRA Claims against Defendants Gilchrist and Santora

Defendants argue Defendants Gilchrist and Santora cannot be liable under the PHRA for any discriminatory and/or retaliatory practices because Plaintiff failed to demonstrate they aided and abetted any discriminatory or retaliatory practice of Defendant Randstad.  Def. Mot. at 24–25.

Plaintiff argues Lisa Lambert and Willie Monterossa of Defendant Randstad's Human Resources Department "failed to take prompt and adequate remedial action.  They both condoned and were complicit in" Defendants Gilchrist and Santora's alleged discrimination and retaliation.  Pl. Resp. at 25.  Therefore, Plaintiff concludes Lisa Lambert and Willie Monterossa can be held liable for "aiding and abetting under the PHRA."  Pl. Resp. at 25.

---

[15] Supra n.14.

[16] Plaintiff's ADA and ADEA claims have been dismissed against all Defendants pursuant to this Memorandum Section VI(B)(1).  Regardless, Defendant is correct that the ADA and the ADEA do not provide for individual liability either.  See Parikh v. UPS, 491 Fed. Appx. 303, 308 (3d Cir. 2012) ("Neither Title VII nor the ADEA provides for individual liability."); see also Koslow v. Com. of Pa., 302 F.3d 161, 178 (3d Cir. 2002) ("[T]here appears to be no individual liability for damages under Title I of the ADA.").

The PHRA contemplates individual liability beyond that of Title VII, and an individual supervisory employee can be held liable under the PHRA if the employee aids or abets the unlawful discriminatory practices of their employer.  Dici v. Com. of Pa., 91 F.3d 542, 552 (3d Cir. 1996).  Plaintiff has set forth sufficient evidence that Defendants Gilchrist and Santora[17] may have aided and abetted Defendant Randstad's discriminatory practices.  The record reveals Plaintiff was the only African American Account Manager at Randstad (Pl. Ex. 42, Gilchrist Depo. Part 1 at 115:1–115:4) and that other people have set forth claims of discrimination against Defendant Randstad.  Pl. Ex. 44, Monterosso Depo. at 9:14–25; Pl. Facts ¶ 59.

## V.   CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is

**Count I:**

GRANTED as to Age Discrimination pursuant to the ADEA;

GRANTED as to Disability Discrimination pursuant to the ADA;

DENIED as to Racial Discrimination pursuant to Title VII against Defendant Randstad;

GRANTED as to Racial Discrimination pursuant to Title VII against Defendants Gilchrist and Santora;

**Count II:**

GRANTED as to Age Discrimination pursuant to the PHRA;

GRANTED as to Disability Discrimination pursuant to the PHRA;

DENIED as to Racial Discrimination pursuant to the PHRA;

**Count III:**

DENIED as to Retaliation.

---

[17] Plaintiff has not named Lisa Lambert or William Monterrossa as defendants in this action, so any claim of liability Plaintiff presents against them in his Response Brief is improper and is denied accordingly.

An appropriate Order follows.

O:\CIVIL 19\19-4037 Brooks v Randstad Tech\19cv4037 Memorandum on MSJ.doc